# Applicability of 18 U.S.C. § 205 to Union Organizing Activities of Department of Justice Employee

The representational bar in 18 U.S.C. § 205 applies to union organizing activities of a federal employee in which he acts as "agent or attorney" for other federal employees before their agency.

The definition of "agency" in 18 U.S.C. § 6 is an expansive one, which establishes a presumption that a governmental entity is an agency for purposes of a given criminal offense, including offenses involving a conflict of interest, and includes entities in the legislative branch.

Even if certain provisions in Title VII of the Civil Service Reform Act (CSRA) specifically protect a federal employee's organizational and representational activities under that Act, notwithstanding the general bar in § 205, those provisions do not apply in this case because the employee group seeking recognition is not a "labor organization" under the CSRA.

June 26, 1981

## MEMORANDUM OPINION
## FOR THE ACTING GENERAL COUNSEL,
## OFFICE OF JUSTICE ASSISTANCE, RESEARCH AND
## STATISTICS

This responds to your request that we reconsider our views on the applicability of 18 U.S.C. § 205 and the implementing Department of Justice regulations to Mr. A's activities as Executive Director of the Capitol Employees Organizing Group (CEOG). Our conclusion in these memoranda was that § 205 bars Mr. A from acting as agent or attorney before any department, agency, or court on behalf of employees of the Senate Restaurant in their efforts to organize and bargain with their employer, the Architect of the Capitol. Mr. A takes issue with this conclusion on grounds that § 205 was not intended to prohibit the sort of activity in which he wishes to engage, and that his activity is protected under Title VII of the Civil Service Reform Act of 1978 (CSRA), 92 Stat. 1111, 1191, 5 U.S.C. § 7101 et seq. After a careful review of the statutes at issue, we reaffirm our previous position.

Mr. A's counsel has suggested that § 205 should not be construed to apply to representational activities before organizational entities within the legislative branch such as the Office of the Architect of the Capitol (OAC). The argument, we assume, is that the OAC is not an "agency" as that term is used in § 205. It is true that the legislative history of the

194

conflict of interest laws indicates that the representational bar of § 205 was not intended to prohibit services before "Congress or its committees." H.R. Rep. No. 748, 87th Cong. 1st Sess. 20 (1961). However, we can find no support for the notion that a similar exemption was intended to apply to other parts of the legislative branch. Indeed, the express extension of the § 205 representational bar to employees of the legislative branch indicates that Congress did not intend to limit the term "agency" to entities within the executive branch.

Moreover, the term "agency" is defined for purposes of Title 18 generally to include

> any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

18 U.S.C. § 6. This Office has in the past taken the position that the definition of "agency" in Title 18 is an expansive one which, in effect, establishes a presumption that a governmental entity is an agency for purposes of a given offense, including the conflict of interest statutes. We conclude, therefore, that the OAC is an "agency" as that term is defined in § 205 and that § 205 accordingly does apply to representational activities before that entity.

A second point raised by Mr. A is that even if § 205 does apply generally to representational activities before an agency of the legislative branch, the particular activities in which he wishes to engage are specifically protected under Title VII of the CSRA. See 5 U.S.C. § 7102. Therefore, he argues, the more general bar of § 205 should give way. We cannot agree that § 701 covers Mr. A's organizing activities on behalf of the Senate Restaurant employees.

Section 701 of the CSRA gives all covered employees the right "to form, join, or assist any labor organization." An employee's rights under this section include the right

> to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities . . . .

While Mr. A is concededly an "employee" enjoying the protections afforded by § 701, see 5 U.S.C. § 7103(a)(2), the CEOG does not appear to be a "labor organization" as that term is defined in Title VII of the

CSRA. *See* 5 U.S.C. § 7103(a)(4).[1] Accordingly, organizational and representational activities in its behalf are not protected under § 701.[2] Thus, even if Mr. A is correct that activities which are protected under § 701 would escape the § 205 bar, this argument avails him nothing in this case.

Finally, Mr. A argues that § 205 was not intended to prohibit the sort of representational activities in which he wishes to engage in behalf of the CEOG. While it is true that the legislative history of § 205 makes no specific mention of union organizing or representational activities, we cannot assume that Congress by its silence intended to enact an exception to the clear terms of the statutory prohibition—a prohibition which applies broadly to *"any* proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which the United States is a party or has a direct and substantial interest . . . ." (Emphasis added.) We have been provided no information which would permit reconsideration of our earlier conclusion that at least some of Mr. A's proposed representational activities would be included on this comprehensive list. Nor do we understand Mr. A to contend that his role would not be that of an "agent or attorney" as those terms are used in the statute. We therefore have no basis on which to change our earlier conclusion that § 205 prohibits at least some of the representational activities he wishes to undertake.

We stress that § 205 does not bar Mr. A from aiding and assisting the Senate employees in their efforts to organize, as long as he does not act as their "agent or attorney." In addition, we should point out that § 205 contains an explicit exception which would allow an officer or employee to aid or assist "any person who is the subject of disciplinary, loyalty, or other personnel administration proceedings in connection with those proceedings." It may well be that some of the matters in which the CEOG Executive Director would represent Senate employees would fall into the category of a "personnel administration proceed-

---

[1] A "labor organization" under Title VII of the CSRA is defined as "an organization composed in whole or in part of employees . . . ." 5 U.S.C. § 7103(a)(4). The term "employee" in turn is defined as an individual "employed in an agency." 5 U.S.C. § 7103(a)(2). In contrast to the expansive definition of "agency" in the Criminal Code, an "agency" is narrowly defined for purposes of Title VII coverage as "an Executive agency . the Library of Congress, and the Government Printing Office . . . " 5 U.S.C. § 7103(a)(3). It is our understanding that the CEOG is composed exclusively of employees of the Senate Restaurant, who are employed by and subject to the administration and supervision of the Architect of the Capitol. If, as we conclude, the OAC is not an "agency" for purposes of Title VII coverage, the Senate Restaurant employees are not "employees" and the CEOG accordingly is not a "labor organization" under the Act. Mr. A might have a valid argument if the definition of the term "agency" were the same in Title VII and in Title 18, but that is not the case.

[2] We note that the National Labor Relations Board has reached a similar conclusion with respect to the analogous provisions of the National Labor Relations Act (NLRA). *See Capital Times Co.*, 234 N.L.R.B. 309 (1978) (covered employee's refusal to cross picket line established by non-covered employees not protected activity under § 7 of the NLRA).

196

ing." We leave it to you to discuss with Mr. A which of his activities may be permissible under one or the other of these provisions.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*
